C. A. Reis v. Commissioner.
Reis v. Commissioner
Docket No. 107162.
United States Tax Court
1943 Tax Ct. Memo LEXIS 271; 2 T.C.M. (CCH) 216; T.C.M. (RIA) 43273; June 4, 1943
*271 Thos. E. Sandidge, Esq., 201 Bates Bldg., Owensboro, Ky., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: The petition herein was filed for the purpose of redetermining deficiencies in income taxes for 1935 and 1936 in the respective amounts of $632.17 and $5,892.25. The issues raised by the petition are (1) whether assessment of the deficiencies is barred by the statute of limitations; (2) the correct basis of certain property sold during each of the taxable years; and (3) whether the property sold represented sales of capital assets. By an amended answer filed at the hearing respondent asked that the deficiencies be increased to $677.53 in 1935 and $6,132.30 in 1936, alleging that he erroneously included certain amounts in the cost basis of property sold in the taxable years. We rendered opinion herein in , to the effect that the notice of deficiency having been issued more than three years after the income tax returns were filed, the statute of limitations against assessment had run, under Section 275 (a) of the Revenue Act of 1936 and that, the income tax *272 returns not being of evidence to show the amounts of gross income stated therein, the respondent, with the burden of establishing an exception to the limitation statute, had not brought the matter within the five-year limitation provided by Section 275 (c) of the Act. Section 275 (a) and (c) is set forth in the margin. [1] Thereafter the motion of the respondent to reopen the record to receive the income tax returns was sustained, by order allowing reception of evidence to meet such proof. Hearing was had, and the income tax returns filed for the taxable years were placed in evidence. No further evidence was offered by either party. The effect is that the respondent now takes the view that such income tax returns shows the amount of years income stated in the returns, within the language of the statute, that properly includible gross income was omitted in excess of 25 per centum of the gross income stated in the returns, and that therefore the five-year limitation is applicable under section 275 (c), and has not run. The principal question now is, therefore, whether there was omitted from the returns, as filed, more than 25 per cent of gross income stated, and whether the omitted amount *273 was "properly includible therein." The conclusion to which we have come upon the question requires findings of fact deemed unnecessary in the earlier opinion, which was based upon the absence from the records of the income tax returns. A stipulation of facts filed by the parties is adopted by reference and we find the facts therein recited. Such portions thereof as deemed necessary to discussion of the issues will be set forth in connection with findings made also from other evidence adduced. *274 Findings of Fact The income tax returns of the petitioner for the taxable years 1935 and 1936 were filed with the Collector of Internal Revenue at Louisville, Kentucky, on or before May 15, 1936, and March 15, 1937 respectively. The deficiency notice for the taxable years was mailed to the petitioner on February 7, 1941. The income tax return for 1935 stated income received as follows: Income of $3,782.95 from sales of coal, rents and miscellaneous. The caption "capital gain" showed "none" by reason of sale of "G. R. Mine miscellaneous items" for $43,382.73 and a cost basis of the same amount. After deduction of various items of maintenance, repairs, overhead expense and depreciation, "Total income" was reported as a loss of $37,807.62. The return for 1936 reported income of $1,981.21 principally from rents, farm income, and interest. The caption "Capital gain" showed a gain of $4,251.59 from sale of "Green River Mine" for $35,429.98, with cost of the same amount. "Total income" was reported as a loss of $24,229.50 after deduction of various items of maintenance, repairs, overhead, depreciation, etc. The income tax returns for both years showed in detail the manner in which and *275 the grounds upon which the petitioner computed his basis for cost and depreciation purposes, $248,399.13 being claimed as costs of all assets on the return for 1935; and for 1936, $150,963.42 is claimed as basis. In 1920 the petitioner entered the employ of Green River Collieries Company under a written agreement with the owners of stock therein. The agreement was that in addition to salary he had the right to purchase stock to the extent of $10,000, book value, and pay for same from the dividends. Shortly thereafter that company was placed in the hands of a receiver. In 1922 petitioner and the stockholders with whom he made the contract in 1920 organized Green River Fuel Company, (hereafter referred to as Fuel Co.) which in 1926 purchased the assets of Green River Collieries Co. at receiver's sale. In 1922 and 1923 petitioner acquired for $5,000 cash 50 shares of the 750 shares of authorized stock of Fuel Co. Prior to December 1927 Fuel Co. issued to petitioner as a gift 15 shares of its stock. The remaining 685 shares of stock in Fuel Co. were owned by Edward D. Evans, John R. Barrett, and E. Clifford Barrett, who were large stockholders of, and were engaged primarily in, the *276 management and operation of the Evans Milling Co. in Indianapolis, Indiana (with whom the petitioner had contracted, as above set forth in 1920 to enter the employ of Green River Collieries Co.) T. J. Naughton owned 10 shares. Petitioner was general manager of Fuel Co. and had active control and supervision of its operations. On December 17, 1927, effective as of January 1, 1927, petitioner and R. J. Fox agreed in writing to act as general manager and sales manager, respectively, of Fuel Co. for a period of ten years at specified minimum salaries, in consideration of which and other consideration Evans and the Barretts agreed to sell to the petitioner and Fox the 675 shares of stock owned by them of Fuel Co. at the purchase price of $338,060.09, with interest at the rate of 5 per cent per annum from January 1, 1927, payable within ten years by the application of dividends paid on the stock from net earnings of Fuel Co. after setting aside specified amounts each year for working capital and improvements. The stock was reissued, 440 shares in the name of the petitioner, 220 shares in favor of Fox, and five shares each in favor of Evans and each of the Barretts, and placed in escrow *277 for delivery to petitioner and Fox as the principal sum was reduced. The voting power of the stock remained in Evans and the Barretts until title was transferred to petitioner and Fox. The contract gave petitioner and Fox the right to pay cash for any part of the stock during the ten-year period at the price of $500.90 per share. In 1928 and 1929 a total of $36,650 was paid to petitioner as dividends on the stock held by the escrow agent in his name. Petitioner in turn paid the amounts on the purchase price of the stock and received therefor from the escrow agent 28.31 shares of stock. By mutual agreement of all the parties thereto the contract of December 17, 1927, was canceled on May 16, 1931, because of the fact that more money had been expended for improvements than permitted by the contract. There was an oral agreement that another contract similar to the one canceled would be drawn if the petitioner desired. Correspondence passed between the petitioner and E. D. Evans on the subject of a contract under the dates of May 29, 1931, June 2, 1931, and June 19, 1931. On May 29, 1931, the petitioner suggested that E. D. Evans "write us a letter outlining our understanding of May *278 16." On May 29, 1931, E. D. Evans by letter told petitioner "Would suggest that you outline a letter which in your opinion would satisfactorily cover the situation." On June 2, 1931, petitioner answered as follows: 1. - Answering yours May 20th., I think a letter as follows addressed to Mr. Fox and myself by you and Messrs. Barrett will cover our understanding at Indianapolis on May 16th: "In consideration of the cancellation of a contract between us dated December 17th, 1927 which granted you the right to purchase under certain terms and conditions from us 675 shares of the common capital stock of the Green River Fuel Company (Ky. corporation), we hereby confirm our verbal understanding on May 16th, with Mr. Reis to the effect that we will, at your option: (a) Make a new contract granting you the right to purchase our present holdings of 632.53 shares of the common capital stock of the Green River Fuel Company (Indiana corporation) under terms and conditions similar to those outlined in the contract mentioned above dated December 17th., 1927 with the exception that the price per share is to be $55.25 higher dating from January 1st, 1931, or (b) Make an entirely different contract *279 whereby you would participate in the earnings, or (c) Require no contract at all." John R. Barrett was ill at the time of this correspondence and on June 19, 1931, F. D. Evans informed petitioner by letter as follows: In reference to yours of June 2d concerning a document in lieu of the contract which was recently canceled, beg to say that Mr. John R. Barrett is in such condition that it is not practical to undertake to talk this matter over with him and it will have to go until such time when he is better. No such letter or contract was ever drawn. The petitioner accomplished the financial support of the operations by Messrs. Evans, Barrett and Barrett and was satisfied and did not feel uneasy about not having a contract. Between May 22, 1930, and February 10, 1932, Evans and the Barretts advanced to Fuel Co. amounts aggregating $133,800, which were used in the improvement, betterment and operation of the mining properties of Fuel Co. and were evidenced by its promissory notes. On October 31, 1933, the face amount of the notes, plus interest to that date, was $143,743.39. Petitioner purchased the notes in October 1933 for $1,338 cash. At that time petitioner owned 94 1/2 shares *280 of stock of Fuel Co. and was its largest creditor. On August 4, 1932, Stephens-Adamson Mfg. Co. filed a suit against Fuel Co. in the Muhlenberg Circuit Court at Greenville, Kentucky, to recover $9,036.92 and to foreclose a mechanic's lien on all of the properties of Fuel Co. to secure the indebtedness. During the pendency of the suit Fuel Co. paid $4,032 on the claim. A judgment was entered in August or September 1933 for the balance. Appraisers appointed by the court appraised the properties of Fuel Co. at $33,000. At the public auction held, on January 8, 1934, pursuant to order of the court, the properties of Fuel Co. were sold to the judgment creditor for $5,510, its bid being the only one offered. The laws of Kentucky gave Fuel Co. one year from the date of the sale to redeem the properties by payment of the amount of the bid plus interest and a penalty of 10 per cent. On May 21, 1932, with the consent of the other stockholders of Fuel Co., who were willing that Reis take over the corporation and its properties and to surrender their interests in the corporation, the petitioner, in lieu of redeeming the property by paying the amount of the bid, purchased the bid of the Stephens-Adamson *281 Mfg. Co. for $5,000 cash and assumed the payment of court costs. On January 14, 1935, petitioner paid the court costs and the commissioner of the court was directed to and did convey to him all the assets of the corporation. Between October 31, 1933, and January 14, 1935, petitioner advanced to Fuel Co. amounts aggregating $6,463.47. The advances were evidenced by notes of the corporation. On July 30, 1934, and January 14, 1935, petitioner paid $2,184.04 and $1,800.40 respectively, for state, county road and school taxes, plus interest and penalties, assessed against Fuel Co. for the years 1932, 1933, 1934 and 1935. Prior to January 14, 1935, petitioner guaranteed, and in 1935 paid, open accounts of Fuel Co. aggregating $130.94. After the petitioner acquired all of the assets of Fuel Co. he prepared an incomplete itemized list of the properties for circulation to prospective customers of coal mine equipment and materials and began to sell certain of the equipment. During 1935 and 1936 petitioner sold various items of the properties for $43,366.76 and $35,429.98, respectively. Included in the sales made in 1935 was one locomotive reel which he purchased on October 26, 1935, for $35 *282 cash. In his determination of the deficiencies the respondent computed the cost basis of the properties formerly owned by Fuel Co. in the following manner: Notes and accounts of Fuel Co.
$ 1,338.00
Advances to Fuel Co. for operations
6,463.57
Purchases of judgment
5,000.00
1932-1933 taxes assumed
2,184.04
1933-1934 taxes assumed
1,800.40
Accounts of Fuel Co. assumed
130.94
Locomotive reel
35.00
$16,951.95
Less: Costs allocable to coal deposits, un-
derground development, surface
land and farm inventory
4,312.58
$12,639.37
Cost allocable to tipple, 60% of
$12,639.37
7,583.62
Balance of cost allocable to trade-
mark, miscellaneous equipment
and supplies
5,055.75
Cost allocable to equipment and
supplies remaining Dec. 31, 1939
(10% of $12,639.37)
1,263.93
Balance allocable to sales made in
1935 to 1939, inclusive
$ 3,791.82
The respondent also determined that sales of equipment and supplies in 1935 and 1936 were $23,948.63 and $34,799.54, respectively, and that total sales of equipment and supplies from 1935 to 1939, inclusive, were $92,125.83. He determined that the properties sold in 1935 had a basis of $985.70 or 23,948.63/92,125.83 or $3,791.82. He found *283 that the properties sold in 1936 had a basis of $1,432.32, or 23,799.54/92,125.83 of $3,791.82. Opinion The first and principal issue is as to the statute of limitation. Inasmuch as the record now shows the amounts of gross income "stated in the return" within the language of section 275 (c), of the Revenue Act of 1934, our inquiry now is whether the petitioner omitted properly includible gross income in amounts more than 25 per cent of the gross income stated. The petitioner argues that he explained fully in his returns and in detail how he computed his bases of cost and of depreciation, and that even if he misfigured actual cost by including non-includible items therein, he has nevertheless disclosed in the minutest detail all of his operations in the statements attached to his returns and has not omitted 25 per cent or any includible income from his returns. In our opinion, the income tax returns do show that the petitioner disclosed his entire receipts and the manner in which by claiming large amounts for a basis of cost he, in effect, offset the amounts received from sale of mine equipment and material. In other words, the returns disclose all of the facts and disclose a claim *284 of cost basis with which the Commissioner did not agree in the computation of the deficiency. However, the petitioner further upon brief states as follows: Obviously, Section 275 (c) was intended to give the Commissioner additional time to investigate the return of a taxpayer who honestly and in good faith made the innocent mistake of omitting a portion of his income in his return, but even in that case, Congress saw fit to provide that the omission must amount to as much as 25% of his includible gross income before the period of limitations was extended from three years to five years for the benefit of the Commissioner. * * * Thus, the petitioner seems to agree that even though there is no omission to state the facts in an income tax return, but only an innocent mistake of omitting a portion of the income, nevertheless "Congress saw fit to provide that the omission must amount to as much as 25% of his includible gross income before the period of limitations was extended from three years to five years for the benefit of the Commissioner." In other words, the petitioner seems to agree that even though there was only an honest mistake, and not omission of facts in the return, the *285 statute of limitations was extended to five years. Regardless, however, of the petitioner's admission in that regard, we took the view in , and held that although petitioner there had shown the amounts involved upon a dividend schedule attached to his return, but had designated them capital, and on the theory that they were not taxable dividend income omitted them from the total amount of dividends included in taxable income, nevertheless such omission to return the amounts as income was sufficient to extend the statute of limitations to five years. We took the same view, in substance, in , and in . Following those cases, we therefore hold that although the petitioner disclosed the full situation on his returns, such fact does not prevent the runing of the five-year statute of limitations, if in fact there was omitted from the income reported upon the returns in excess of 25 per cent of the gross income as stated thereon. The answer therefore depends upon whether the petitioner applied *286 the proper basis of cost against the items of $43,336.76 and $35,429.98 received by him in 1935 and 1936, respectively, from the sale of coal mine equipment and materials from among the properties of Fuel Co. purchased by him upon sale of that company's properties under the judgment which he purchased from Stephens-Adamson Mfg. Co. The respondent contends under its amended pleadings that the petitioner's base consists only of the $5,000 paid by him for the judgment, plus $3,984.40 taxes assumed and paid by the petitioner, $130.94 accounts of Fuel Co. assumed by the petitioner and an item of $35. representing the cost of a locomotive reel, purchased by the taxpayer in 1935 and sold in that year. Since the Commissioner in the deficiency notice also allowed as base $6,463.57, representing advances to Fuel Co. by the petitioner and $1,338, representing cost of notes, against Fuel Co., in the face amount of $133,800 purchased by the petitioner, but now urges his error in inclusion of those items in the cost basis; and further, since the respondent is seeking, as we held in our former opinion herein, to establish an exception to the three-year limitation, which has admittedly run, the burden *287 of proof is upon the respondent, to show that the basis used by the petitioner was erroneous. The basis for which the petitioner argues is $200,972.34, as follows: Cost of notes with interest (includ-
ing $1,338 paid in cash)
$143,743.39
Cash paid for stock in corporation
41,650.00
Cash advances for maintenance and
operation of corporation
6,463.57
Cash for bid of Stephens-Adamson
Mfg. Company
5,000.00
Taxes paid for corporation
3,984.44
Guaranteed accounts paid for corpo-
ration
130.94
TOTAL
$200,972.34
Since the parties are in agreement upon the last three items thereof, we need examine only the first three items. Petitioner's contention is in substance, that from the beginning of his connection with the old Green River Collieries Co. to the sale of the assets of Fuel Co. in 1935, he had a right to acquire the stock and assets of the corporation, and expended his labor, services and money for that object; that he acquired the notes of $143,743.39 for $1,338 and the release of the obligation of Evans, Barrett and Barrett to continue to finance the company and to enter a new stock purchase agreement with him; that the value of the consideration so paid by him was *288 the face value of the notes; that after purchasing such notes he was in effect in possession of the company and thereafter financed it; and that the other stockholders were willing to surrender their interests and consented to his purchasing the bid and taking over the property; that being in control and the principal creditor he could, without expense in money, have bid against the creditor at the sale, and therefore the nominal amount of $5,000.00 for which he purchased that bid does not represent the real basis of cost of the property to him, but that it includes the cost of his stock, the face amount of the notes purchased and cash advancements for maintenance of the corporation, after he purchased the $143,743.39 in notes. In our opinion, such view is erroneous for several reasons. In the first place, although the petitioner testified that there was a valuable agreement on May 16, 1931, that Messrs. Evans, Barrett and Barrett "would go on and finance * * *," the evidence not only does not designate whom they would finance, but we find that it otherwise contradicts the statement just quoted as to financing; for the petitioner placed in evidence correspondence immediately following *289 January 16, 1931, the date upon which he contends the oral agreement took place, and a letter signed by the petitioner on June 2, 1931, says: "I think a letter as follows, addressed to Mr. Fox and myself by you and Messrs. Barrett will cover our understanding at Indianapolis on May 16th." The proposed letter-contract states that in consideration of the cancellation of the contract of December 17, 1927, granting the right to purchase 675 shares of the stock of Fuel Co. the verbal understanding on May 16th is confirmed, to the effect that Messrs. Evans, Barrett and Barrett, would, at the option of Reis and Fox (a) make a new contract similar to the old; (b) make an entirely different contract whereby Reis and Fox would participate in the earnings, or (c) make no contract at all. We must and do regard this letter by the petitioner, written during the course of the transaction, as casting better light on the situation, than his memory at the time of trial; and it shows that an agreement, not mentioning any agreement of Messrs. Evans, Barrett and Barrett to finance, would "cover our understanding at Indianapolis on May 16th." In the income tax return for 1935 the petitioner states that *290 the stock purchased contract was canceled May 16, 1931, in consideration of a promise to substitute "some other agreement." An agreement merely to execute another similar stock purchase agreement can not be valued by the value of the notes purchased. It will be noted also that the only agreement, and the one which the petitioner on June 2, 1931, proposed be covered by a letter, was with both himself and Fox, for the letter was to be "addressed to Mr. Fox and myself." We hold that the petitioner had no contract with Messrs. Evans, Barrett and Barrett, requiring them to further finance the corporation for him and therefore that the face value of the notes against Fuel Co. which the petitioner purchased for $1,338, may not be considered as cost basis to him of the properties of Fuel Co. received under his purchase of the judgment; nor does the $1,338 compromise basis, being merely cost of obligations against the company. Whether under the circumstances the petitioner may have had a loss in 1935, by reason of an oral contract for further stock purchases is not a question properly presented for our determination here. With reference to the petitioner's contention that there should be *291 added to his cost basis the $41,650, representing the cost to him of his stock in Fuel Co.: This item, too, we think may not properly be added, and likewise the question whether at the time the petitioner took a loss upon such stock is not properly presented for determination by us. Petitioner's argument that at all times he had a right to acquire the stock assets of Fuel Co. and therefore his investment in stock is an essential element of the cost to him when he finally acquired such assets, is contrary to the record. The agreement which he had in the beginning with Messrs. Evans, Barrett and Barrett with reference to stock in the old Green River Collieries Co. was only to purchase $10,000 in stock, and obviously was superseded by the written agreement of December 17, 1927, under which Fox participated with him in the right to acquire stock in Fuel Co. and the petitioner had rights only to a portion; and even the oral agreement of May 16, 1931, is shown by the petitioner's letter of June 2, 1931, to have included Fox, as a proposed stockholder, so that the record negatives the idea that the petitioner himself in connection with his holdings of stock in Fuel Co. had the full right *292 to acquire all of the assets thereof, so that the cost of his stock could be considered part of his cost of such assets when he finally acquired them. The connection between stock held and contract for stock purchases is not so connected with the purchase of the bid and properties as properly to be considered cost basis therefor. That the petitioner as principal creditor had the consent of all other parties to take over the corporation and purchase the bid, is an element too intangible to constitute reason for adding cost of stock and notes to the cost basis. We conclude and hold that the petitioner acquired the assets not by virtue of previous stockholdings or agreements, but by purchase for $5,000 cash of the bid of Stephens-Adamson Mfg. Co., and that such $5,000 constitutes his base, together with the $3,984.44 taxes and $130.94 indebtedness assumed by him, plus, of course, the $35 cost to him of a locomotive reel which he purchased and sold in 1935. We add thereto the item of $6,463.57 representing loans or advances to Fuel Co. for it was originally allowed by the Commissioner, and we think the respondent has not shown error therein. The only evidence is that promissory notes *293 were given. In the light of the above conclusion, it is apparent and we hold that the petitioner erred in deducting from the $43,366.76 and the $35,429.98, received by him from the sales in 1935 and 1936 of a part of the equipment and materials, equal amounts as cost basis, and that his cost basis totaling only as above held, $15,613.95 instead of approximately $78,000 basis allocated against the sales of assets, he omitted from his gross income, as stated on the returns, amounts of gross income properly includible, in excess of 25 per cent of the amount of gross income stated in the returns. We therefore hold that the five-year statute of limitations provided by section 275 (c) is applicable, and that the statute of limitations has not run at the time the notices of deficiency were mailed, within five years from the date of the filing of the returns. There remains for consideration the question whether the property sold represented sales of capital assets. The respondent takes the view that the petitioner was in effect in the business of selling the material and equipment which he acquired among the assets of the old Fuel Co., while the petitioner contends that in so doing, he was *294 merely conserving his capital. On this question the petitioner has the burden of proof. The evidence in substance is that he had been in the mining business for a long period of years, that he acquired all of the properties, both real and personal, of Fuel Co. by a sale thereof under the judgment, and that he advertised for sale an incomplete list of such properties and assets and sold a portion thereof. The advertisement offered "Will consider investing some items upon receipt of details." Otherwise, as above set forth, the nature of the petitioner's business after the purchase of the assets of the Fuel Co. does not appear from the record. Although the petitioner testified, no additional light was given upon that subject. At least one item, the locomotive reel, was purchased separately from the purchase under the judgment, and long thereafter, on October 26, 1935, and was resold by him. Under section 117 of the Revenue Act of 1934 and 1936, there must be excluded from capital assets stock in trade, property properly includible in the taxpayer's inventory, and property held by him primarily for sale to his customers in the ordinary course of his trade or business. The property involved *295 here was included in a long itemized list of properties of many kinds listed in detail in the advertisement which the petitioner put out to the public in an effort to sell the properties. Although the advertisement does indicate that investment of some items would be considered, this fact is not, in our opinion, inconsistent with the conduct of a business of selling the materials on hand, as determined in the deficiency notice, and although they were only a part of the properties purchased by the petitioner, the record does not show that a mining business or business other than that of selling the materials on hand, was being conducted by the petitioner. The business of selling the mining material and equipment need not be the petitioner's only business. . The respondent determined that the sales were not of capital assets. We find no evidence sufficient to overcome the presumption of the correctness of that determination, and therefore find no error therein. Nor may we sustain petitioner's contention that it is impossible to allocate cost of the specific items sold in the taxable years and that therefore no gain should therein *296 be recognized. Taxation is on a yearly basis. . . The allocation made in the deficiency notice is not shown to be erroneous. Decision will be entered under Rule 50. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩